IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

VENISSA R. SADDLER, on behalf of  )
herself and all others similarly  )
situated,                         )
                                  )
    Plaintiff,                    )
                                  )    No. 12-CV-2232-JTF-tmp
vs.                               )
                                  )
MEMPHIS CITY SCHOOLS,             )
                                  )
    Defendant.                    )
                                  )

_____

# REPORT AND RECOMMENDATION
_____

Before the court by order of reference is plaintiff Venissa R. Saddler's Motion to Conditionally Certify Collective Action Under the FLSA, Order Disclosure of Putative Class Members' Names and Contact Information, and to Facilitate Class Notice ("Motion to Certify"). (ECF No. 23.) In her motion, Saddler seeks a court order (1) conditionally certifying this case as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; (2) authorizing notice under 29 U.S.C. § 216(b) to all current and former Accountants of the Board of Education of the Memphis City Schools ("MCS") from the past three years who were not paid overtime compensation for all hours worked in excess of forty hours in a single work week; (3) requiring MCS to provide Saddler with the names, last known addresses, email addresses, and dates of

employment for all such employees, and to conspicuously post notice of this case at MCS's offices; and (4) authorizing plaintiff's counsel to post information about this lawsuit on their law firms' website. MCS filed a response in opposition, to which Saddler filed a reply.

For the reasons below, it is recommended that the Motion to Certify be granted in part and denied in part.

## I. PROPOSED FINDINGS OF FACT

MCS is the school district responsible for operating public schools in Memphis, Tennessee.[1] MCS classifies employees who perform accounting work as either a Senior Accountant, Accountant, Staff Accountant, or Accounting Clerk (hereinafter collectively referred to as "accounting employees"). Senior Accountants, Accountants, and Staff Accountants are classified by MCS as exempt under the FLSA, and as a result, are not paid for any overtime work.[2] The accounting employees work in various departments within MCS, one of which being the Finance Department. The Finance Department is comprised of four divisions: Fiscal Services, Budget

---

[1] MCS is the largest school system in Tennessee. It has approximately 105,000 students and 209 schools. MCS has 16,081 full-time and part-time staff, including more than 7,000 teachers. See Bd. of Educ. of Shelby Cnty., Tenn. v. Memphis City Bd. of Educ., No 11-2101, 2011 WL 3444059, at *1 (W.D. Tenn. Aug. 8, 2011).

[2] There is no evidence in the record that Accounting Clerks are classified as exempt by MCS. In any event, Saddler does not claim that Accounting Clerks are misclassified or that they work overtime.

-2-

Services, Accounts Payable, and Payroll. The specific duties assigned to accounting employees vary within each department and among the various departments. Due to the specialized knowledge required to perform accounting tasks, all accounting employees are required to have a minimum of a Bachelor's Degree in Accounting or Finance.[3] The accounting employees in the Finance Department receive training from their direct supervisors and other accounting employees once they are hired by MCS. Training usually consists of showing new accounting employees how to work MCS's software programs and providing guidance on how their assigned duties have been performed in the past. There are also certain accounting standards that MCS's accounting employees must comply with when performing their duties. These standards include Generally Accepted Accounting Principles ("GAAP"), which are widely accepted in the accounting field, and state and board policies that provide general guidelines for public accounting.[4] Other than these accounting standards, there are no detailed policies or procedures that dictate how the accounting employees are to perform their job duties.

According to MCS, it has employed only ten Accountants (also

---

[3] Saddler disputes this requirement. However, this dispute is immaterial for purposes of deciding the instant motion.

[4] GAAP is a collection of methods used to process, prepare, and present public accounting information. The purpose of these standards is to maintain consistency in reporting financial information to reduce the risk of fraud or error.

referred to as "110-level Accountants") system wide since January 2009.[5] Currently, three Accountants work in the Finance Department, with two of them (Venissa Saddler and Sheila Gatson) working in the Fiscal Services division. The Fiscal Services division also currently has three Senior Accountants, whose duties include, among other things, supervising and reviewing the work of the Accountants. These three Senior Accountants are Teresa Todd, Angela Carr, and Mildred Davis. Todd supervises Saddler, while Carr supervises Gatson. The Director of Fiscal Services is Nancy Richie and the Coordinator is Carla Smith, both of whom are above the Senior Accountants. In addition, MCS currently employs two Staff Accountants system wide, one of whom works in the Finance department.[6]

Saddler was hired by MCS as an Accountant in the Fiscal Services division in March 2011.[7] She receives a salary of $2,040.19 every two weeks, totaling approximately $53,000.00 per year. MCS maintains a written job description for the Accountant position. Under the subheading "General Description," the job is

---

[5] "110-level" represents the Accountant position's salary grade.

[6] It is unclear from the present record how the duties of Staff Accountants compare to those of other accounting employees.

[7] Saddler has an Associate Degree in General Business and a Bachelor's Degree in Finance and Accounting, as well as a Master of Business Administration in Finance and a Master of Accounting. Prior to working for MCS, she worked as a Senior Auditor for Deloitte & Touche LLP.

described as follows:

> The essential function of the position within the organization is to perform responsible professional accounting functions in the maintenance of accounting and internal control systems for the assigned school and/or department using established accounting procedures and policies. The position is responsible for efficiently recording, summarizing and reporting the result of financial activities; providing responsible clerical or administrative assistance to supervisor, and performing related tasks as assigned. The position works under general supervision, independently developing work methods and sequences.

(ECF No. 24-5.) Under the subheading "Primary Duties," the job is further described as involving, among other things, preparing, monitoring, and managing assigned budgets; providing daily cash management; balancing daily receipts; preparing billing invoices; managing accounts payable; preparing spreadsheets; maintaining financial records for school and district programs; assisting with audits; reconciling bank statements; and explaining financial policies and procedures to personnel. (Id.) As stated earlier, the specific tasks assigned to each Accountant vary.

In her complaint, Saddler claims MCS has misclassified Accountants as exempt from overtime compensation, in violation of the FLSA. (Compl. ¶ 1.) She alleges the duties that MCS requires of its Accountants are essentially duties of a bookkeeper, involving no analysis of information, formulation of expert opinion, or exercise of any knowledge of an advanced type in the field of accounting. (Id. ¶¶ 12, 21-22.) She contends she was given instructions and directions by Senior Accountants and

-5-

Directors about how to perform her work, her work was reviewed by Senior Accountants and Directors, and she did not have the authority to supervise, hire, fire, or discipline any MCS employee. (Id. ¶¶ 23, 24, 29.) According to Saddler, she and other Accountants should not have been exempt from receiving FLSA overtime benefits because they were not an "executive," "administrative," "professional," or "computer" employee, as those terms are defined under the FLSA. (Id. ¶ 42.) The collective class of similarly situated individuals that Saddler seeks to certify includes "[a]ll current and former employees of Defendant who worked as an Accountant in excess of 40 hours in a work week, and who were designated as salaried and thereby denied overtime compensation for hours worked." (Id. ¶ 8.) In support of her Motion to Certify, Saddler has submitted her own affidavit, in which she states (1) she and other Accountants have been paid on a fixed salary structure; (2) she and other Accountants frequently worked in excess of forty hours per week; (3) she and other Accountants worked evenings and weekends; (4) she and other Accountants performed bookkeeper duties that did not require analysis of information, formulation of expert opinions, or application of advanced knowledge in the field of accounting; (5) she and other Accountants completed their tasks at the direction and under the supervision of Senior Accountants and Directors; and (6) Accountants are a position below Senior Accountants but above

Accounting Clerks.[8] (ECF No. 24-1.)

In opposition to the Motion to Certify, MCS has submitted affidavits from several of its current and former employees, including Accountants, Senior Accountants, and Staff Accountants.[9] While the statements made in these affidavits vary to some degree, the affidavits generally demonstrate a consensus among the current and former Accountants and Staff Accountants that their job duties require the use of independent judgment and discretion, require an advanced level of education and skill, and that they were made aware of their status as exempt employees by the job description or during their interviews. Many of these affiants state that he or she has received all of the compensation owed to him or her.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard for Conditional Certification Under the FLSA

Section 216(b) of the FLSA states that:

> Any employer who violates [the minimum wage and maximum hours provisions] of this title shall be liable to the

---

[8] According to her deposition testimony, Saddler concedes that Senior Accountants are properly classified as exempt under the FLSA. She makes no mention of Staff Accountants.

[9] Many of the present and former Accountants have worked in multiple positions, having been promoted or having moved from one division to another. The affidavits submitted by current and former accounting employees include Nancy Richie, Loretta Webster, Christopher Lurry, Angela Carr, Waltina Pearson, Mildred Davis, Kerry Watkins, Jeanette Hunt, Torhonda Cathey, Aetna Smith, William Fulton, Michelle Brown, Shenarick Story, and Teresa Todd. Also attached to MCS's opposition brief are portions of transcripts from the depositions of Saddler and Sheila Gatson, as well as various other exhibits and affidavits.

<mark>-7-</mark>

> employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. [. . .] An action to recover [liability] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Thus, in order to join a collective action, an employee must (1) be "similarly situated" to the plaintiff maintaining the action, and (2) give his written consent to join. Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006). A collective action brought under § 216(b) is distinguishable from a class action, which is governed by Federal Rule of Civil Procedure 23, in that plaintiffs in a collective action must "opt-in" rather than "opt-out" of the lawsuit. Id.

The Sixth Circuit has adopted a two-stage procedure to certify a collective action class under the FLSA. In re HCR ManorCare, Inc., No. 11-3866, 2011 WL 7461073, at *1 (6th Cir. Sept. 28, 2011); see also Comer, 454 F.3d at 544. The first stage is a conditional certification step, which typically occurs at the beginning of discovery and is often referred to as the "notice" stage. See, e.g., Frye v. Baptist Mem'l Hosp., No. 11-5648, 2012 WL 3570657, at *3 (6th Cir. Aug. 21, 2012). The second stage is final certification, which occurs toward the end of discovery and must satisfy a stricter standard. Id. Upon a motion for

conditional certification, a district court "may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." Comer, 454 F.3d at 546.

At the conditional certification stage, the plaintiff's burden is "fairly lenient" as he "must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" Id. at 546-47 (quoting Pritchard v. Dent Wizard Int'l, 210 F.R.D. 591, 595 (S.D. Ohio 2002)); see also Wade v. Werner Trucking Co., No. 2:10-CV-00270, 2012 WL 5378311, at *3 (S.D. Ohio Oct. 31, 2012); Martin v. Psalms, Inc., No. 2:10-cv-02532-STA-dkv, 2011 WL 2882387, at *3 (W.D. Tenn. July 15, 2011). The court's decision to conditionally certify a class "need only be based on a modest factual showing" by the plaintiff, and thus, as the Sixth Circuit has recognized, this first stage "typically results in conditional certification of a representative class." Id. at 547 (internal quotation marks omitted); see also White v. Baptist Mem'l Hosp. Health Care Corp., 699 F.3d 869, 877 (6th Cir. 2012); Garrett v. Sitel Operating Corp., No. 10-cv-2900-STA-cgc, 2011 WL 5827240, at *4 (W.D. Tenn. Nov. 18, 2011); Martin, 2011 WL 2882387, at *6. At this stage, the court does not resolve factual disputes or evaluate the weight of the evidence, merits of the claims, or credibility of the plaintiffs. See, e.g., Wade, 2012 WL 5378311, at *3; Burdine v. Covidien, Inc., No. 1:10-CV-194, 2011 WL 2976929, at *2 (E.D. Tenn. June 22, 2011); Brasfield v. Source Broadband

-9-

Servs., LLC, 257 F.R.D. 641, 642 (W.D. Tenn. 2009). Furthermore, plaintiffs need not show that members of the putative class suffered from a "unified policy" of violations, but rather they must only show that their claims are "unified by common theories of defendant's statutory violations, even if the proofs of these theories are inevitably individualized and distinct." O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 584-85 (6th Cir. 2009).

In opposing this lenient standard, MCS argues that "[w]here the parties have engaged in substantial discovery and the court is equipped with much more information to 'make a factual determination on the similarly situated question,' courts require more exacting evidence of whether putative class members are similarly situated." (Def.'s Resp. Br. at 12.) According to MCS, "a heightened standard of review must apply in considering whether putative class members are 'similarly situated' to Plaintiff." (Id.) Some courts within the Sixth Circuit have applied an intermediate or hybrid standard in cases where a substantial amount of discovery has been completed at the time of conditional certification. See, e.g., Bowman v. Crossmark, Inc., No. 3:09-CV-16, 2010 WL 2837519, at *4-5 (E.D. Tenn. July 19, 2010) (applying a "more demanding standard" than the lenient "notice stage" standard where the "plaintiffs did not move for conditional certification until almost one year after the case had been filed, and in that time considerable discovery directed toward conditional

-10-

certification was conducted[,]" creating a record on the issue of conditional certification that was "several hundred pages in length"); Pacheco v. Boar's Head Provisions Co., Inc., 671 F. Supp. 2d 957, 960 (W.D. Mich. 2009) (applying a "more restrictive, but still lenient standard, requiring the plaintiffs to demonstrate at least modest factual support for the class allegations in their complaint" because the court had afforded the parties two months of discovery "focused solely on the issue of certification" prior to the hearing on certification and notice) (internal quotation marks omitted); Henry v. Quicken Loans Inc., No. 04-40346, 2006 WL 2811291, at *4-5 (E.D. Mich. Sept. 28, 2006) (considering "factors from both the first and second phases of the [certification] inquiry to determine whether Plaintiffs are similarly situated" where more than a year had elapsed between the filing of the complaint and the filing of the motion, and in that time "significant discovery [had] been conducted, as evidenced by the depositions of Defendants, the submission of interrogatories, etc."). In other cases, however, district courts within this circuit have declined to apply a heightened standard at the conditional certification stage, despite the parties' discovery efforts. See, e.g., Cason v. Vibra Healthcare, No. 10-10642, 2011 WL 1659381, at *2 n. 2 (E.D. Mich. May 3, 2011) ("Some courts apply a more stringent standard after some discovery had been conducted. The court declines to impose a more stringent standard at this

stage."); Bernal v. TrueBlue, Inc., No. 1:08-CV-507, 2010 WL 1996922, at *3-4 (W.D. Mich. May 19, 2010) ("Though limited discovery occurred prior to the filing of this motion, this matter is still at the early stages of discovery, and not all putative class members have been notified or given an opportunity to opt in . . . . [Thus,] the decision to conditionally certify a class is made using a fairly lenient standard.") (internal quotation marks omitted). Notably, this court has rejected the application of an intermediate standard. See Lindberg v. UHS of Lakeside, LLC, 761 F. Supp. 2d 752, 758 n. 8 (W.D. Tenn. 2011) ("The results of any discovery completed while this motion has been pending are not before the Court. The appropriate standard to apply for purposes of determining Plaintiffs' motion is the more lenient, first-stage standard.").

Here, the court finds that, even assuming a heightened standard would ever be appropriate at the conditional certification stage, the more lenient standard nevertheless applies to Saddler's Motion to Certify. While some discovery has been conducted, the discovery deadline is still several months away (June 17, 2013). The Motion to Certify was filed shortly after the discovery period opened, and based on the discovery motions filed by the parties, their efforts to obtain discovery are ongoing. The courts that have applied a heightened standard did so based on a record that was more thoroughly developed than the one presently before this

court, or at the very least, involved parties who had a fair opportunity to conduct class discovery. While the discovery that has been completed thus far provides the court with more evidence upon which to base its conditional certification determination, it is not enough to justify altering the lenient standard that the court must apply.

**B.  Similarly Situated**

Saddler seeks conditional certification of "all current and former Accountants of [MCS] who have performed work for [MCS] during the past three (3) years, and who were not provided overtime compensation for all hours worked in excess of forty (40) in a single work week." Based on the entire record, the court finds that Saddler has sufficiently demonstrated that she and other Accountants at MCS are similarly situated. Saddler has submitted a sworn affidavit in which she states that (1) she and other Accountants have been paid on a fixed salary structure; (2) she and other Accountants frequently worked in excess of forty hours per week; (3) she and other Accountants worked evenings and weekends; (4) she and other Accountants performed bookkeeper duties that did not require analysis of information, formulation of expert opinions, or application of advanced knowledge in the field of accounting; (5) she and other Accountants completed their tasks at the direction and under the supervision of Senior Accountants and Directors; and (6) Accountants are a position below Senior

-13-

Accountants but above Accounting Clerks.

MCS objects to Saddler's affidavit.[10] MCS contends that Saddler's affidavit violates the Federal Rules of Evidence because it is not based on personal knowledge, contradicts her prior sworn deposition testimony, and "contains numerous baseless opinions." MCS cites various cases in which courts, in considering motions for summary judgment, have stricken affidavits that contained statements in violation of the Federal Rules of Evidence or contained statements contradicting prior deposition testimony. This court and others within the Sixth Circuit have declined to require that affidavits submitted for conditional certification purposes meet the same evidentiary standards as those submitted for summary judgment. In one such case, White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 368-69 (E.D. Tenn. 2006), the court, in granting a motion for conditional certification, refused to strike portions of the plaintiffs' affidavits, which the defendant argued contained inadmissible hearsay. The court stated that "[a]t this preliminary stage and for these preliminary purposes, plaintiffs need not come forward with evidence in a form admissible at trial." Id. at 368 (internal quotation marks omitted). The court in White distinguished conditional certification from summary judgment on

---

[10]MCS's objections to Saddler's affidavit are set forth in a motion to strike, which was filed separately. (See ECF No. 31.) The court previously denied the motion as procedurally improper, but in so ruling, stated that it would consider the objections raised in the motion to strike when deciding the Motion to Certify.

-14-

two grounds: (1) conditional certification occurs at a much earlier stage in litigation, so the plaintiff "has not yet been afforded an opportunity . . . to test fully the factual basis for his case"; and (2) "motions for conditional certification, unlike motions for summary judgment, do not seek the final disposition of a case on the merits." Id. While the court determined that affidavits in support of motions for conditional certification do not need to meet all evidentiary standards for admissibility, it stated that "affidavits submitted at the notice stage must be based on the personal knowledge of the affiant." Id. at 369.

Other courts within the Sixth Circuit have followed the reasoning of White and have similarly found that standards pertaining to admissibility are not strictly applied at the conditional certification stage. See, e.g., Fisher v. Mich. Bell Tel. Co., 665 F. Supp. 2d 819, 826 (E.D. Mich. 2009) ("This Court rejects Defendant's argument that Plaintiffs' declarations should be disregarded because they are not based on personal knowledge and contain inadmissible hearsay."); Monroe v. FTS USA, LLC, 257 F.R.D. 634, 639 (W.D. Tenn. 2009) ("[C]ourts in the Sixth Circuit have held that plaintiff's evidence on a motion for conditional certification must not meet the same evidentiary standards applicable to motions for summary judgment because to require more at this stage of litigation would defeat the purpose of the two-stage analysis[.]") (internal quotation marks omitted); Crawford v.

Lexington-Fayette Urban Cnty. Gov't, No. 06-299 JBC, 2007 WL 293865, at *4 (E.D. Ky. Jan. 26, 2007) ("When, after both sides have conducted discovery, the defendant moves for decertification in the FLSA collective action, the plaintiffs must demonstrate that any evidence conditionally admitted during the conditional certification process is admissible under the Federal Rules of Evidence."). Furthermore, although the court in White noted that affidavits submitted at the notice stage must still "be based on the personal knowledge of the affiant[,]" White, 236 F.R.D. at 369, other courts appear to apply a more relaxed standard to the personal knowledge requirement. See, e.g., Fisher, 665 F. Supp. 2d at 826 (declarations stated that supervisors were aware of the defendant's alleged illegal practices, and the court found that "such awareness can reasonably be inferred at this preliminary stage") (internal quotation marks omitted); Monroe, 257 F.R.D. at 639 (finding that declarations were sufficient when they merely "stated they are based upon [the declarants'] knowledge and experience").

In this case, Saddler's affidavit states that it is based on her own personal knowledge and belief. To the extent her statements contradict certain portions of her deposition testimony or the countervailing evidence presented by MCS, the court should not resolve these witness credibility issues or factual disputes at the conditional certification stage. As for MCS's objections based

-16-

on Saddler's lack of knowledge regarding the duties of Accountants in other departments within MCS, her inability to describe in detail those duties does not foreclose conditional certification. The duties of Accountants in other departments (including Accountants outside of the Finance Department) can be further developed through discovery after conditional certification.[11]

In addition to her affidavit, Saddler also has provided MCS's written job description for Accountants. Numerous courts have recognized the probative value of company job descriptions in considering whether employees are similarly situated for the purpose of conditional certification. See, e.g., Wade v. Werner Trucking Co., No. 2:10-CV-00270, 2012 WL 5378311, at *5 (S.D. Ohio Oct. 31, 2012) (stating that job descriptions indicate that defendant uniformly classified fleet managers as exempt employees); McNelley v. ALDI, Inc., No. 1:09 CV 1868, 2009 WL 7630236, at *3 (N.D. Ohio Nov. 17, 2009) (approving conditional class certification in part because a job description reflected that store managers performed the same basic duties); Titchenell v. Apria Healthcare Inc., No. 11–563, 2012 WL 3731341, at *4–5 (E.D. Pa. Aug. 29, 2012) (expanding conditional certification to additional job titles based largely on substantial overlap between job descriptions); Ruffin v. Avis Budget Car Rental, LLC, No.

---

[11]As stated earlier, according to MCS, from January 2009 to the present, it has employed only ten Accountants system wide.

11-01069, 2012 WL 2514841, at *3 (D.N.J. June 28, 2012) (noting, in granting conditional certification, that although the defendant maintained that shift managers performed differing duties, there was no evident variation in their job descriptions). But see Pickering v. Lorillard Tobacco Co., Inc., No. 2:10–CV–633, 2012 WL 314691, at *12 (M.D. Ala. Jan. 30, 2012) ("[A] standardized job description is insufficient to justify a nationwide collective action based upon a claim that the employer improperly classified a category of employees as exempt."); Forney v. TTX Co., No. Civ. A. 05 C 6257, 2006 WL 1030194, at *3 (N.D. Ill. Apr. 17, 2006) ("Whether similarly situated employees exist depends on the employees' actual qualifications and day-to-day duties, rather than their job descriptions."). Saddler has sufficiently shown, for purposes of conditional certification, that Accountants performed similar job duties, were classified as exempt, and were not paid overtime. See Greenwald v. Phillips Home Furnishings, Inc., No. 4:08CV1128, 2009 WL 259744, at *5 (E.D. Mo. Feb. 3, 2009).

The court notes, however, that Saddler has only shown that she and other Accountants (i.e. 110-level Accountants) are similarly situated. Importantly, she has not shown, even under the lenient standard, that she is similarly situated with other accounting employees, such as Senior Accountants or Staff Accountants. She has not provided the court with any basis - either in her complaint, her Motion to Certify, or her affidavit - to find that

-18-

these other accounting employees are similarly situated. Indeed, she makes no mention of these other accounting employees in her filings, other than perhaps to distinguish their duties from the duties of Accountants.

**C.     Notice**

Saddler has attached to her Motion to Certify the following proposed notice-related documents: (1) Notice of Your Right to Opt-In to Lawsuit Against Memphis City Schools; and (2) Plaintiff Consent Form.  It is recommended that the Notice and Consent Form be approved, with the following changes:  first, any reference to "accountant" should be changed to "110-level accountant," and second, on page 2 of the Notice, the words "who performed basic bookkeeping-type audit services" should be stricken from the first sentence.

## III. RECOMMENDATION

For the reasons above, it is recommended that the Motion to Certify be granted in part and denied in part, and that the court (1) conditionally certify this collective action pursuant to the FLSA, 29 U.S.C. § 216(b), for Saddler and all other 110-level Accountants who have performed work for MCS over the past three years without receiving overtime compensation for hours worked in excess of forty in a single work week; (2) order MCS to produce to Saddler a list of all potential class members, including the last known mailing address, e-mail address, and telephone numbers within

fourteen (14) days from the date of the order in a readable electronic data file format; (3) order MCS to conspicuously post notice of this case in its office locations where 110-level Accountants work; and (4) authorize Saddler to send notices and consent forms of this lawsuit to potential opt-in plaintiffs, in the forms attached to the Motion to Certify and as modified by this Report and Recommendation.[12]

    Respectfully Submitted,

                      s/ Tu M. Pham
                      TU M. PHAM
                      United States Magistrate Judge

                      February 4, 2013
                      Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

[12]Saddler also requests permission for her counsel to post information about this lawsuit on plaintiff's counsel's website. The court finds that this additional step is not warranted, as the above-described steps should provide all of the potential class members with sufficient notice about this lawsuit.